**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |
|---|---|
| LENEUOTI FIAFIA TUAUA<br>2242 Ali'i Street<br>Faga'alu, AS 96799; | )<br>)<br>)<br>) |
|  | ) |
| VA'ALEAMA TOVIA FOSI<br>4428 Sierra Drive<br>Honolulu, HI 96816; | )<br>)<br>) |
|  | ) |
| FANUATANU FAUESALA LIFA MAMEA,<br>  on his own behalf and on behalf of his<br>  minor children, M.F.M., L.C.M., and E.T.M.<br>Mamea Residence *(no street address)*<br>P.O. Box 3010<br>Tafuna, AS 96799; | )<br>)<br>)<br>)<br>)<br>) |
|  | ) |
| TAFFY-LEI T. MAENE<br>10455 Des Moines Memorial Drive, Suite 301<br>Seattle, WA 98168; | )<br>)<br>) |
|  | ) |
| EMY FIATALA AFALAVA<br>6909 Ottoville Street<br>Pago Pago, AS 96799; and | )<br>)<br>) |
|  | ) |
| SAMOAN FEDERATION<br>  OF AMERICA, INC.<br>404 E. Carson Street<br>Carson, CA 90745, | )<br>)<br>)<br>) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| UNITED STATES OF AMERICA<br>Serve to:<br>U.S. Attorney General<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530;<br>U.S. Attorney for the District of Columbia<br>555 4th Street NW<br>Washington, DC 20530; | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|  | ) |

Civil Action No. 12-1143

|                                                    |     |
| -------------------------------------------------- | --- |
| U.S. DEPARTMENT OF STATE                            | )   |
| 2201 C Street NW                                   | )   |
| Washington, DC 20520;                              | )   |
|                                                    | )   |
| HILLARY RODHAM CLINTON,                             | )   |
|   in her official capacity as                      | )   |
|   Secretary of the U.S. Department of State        | )   |
| 2201 C Street NW                                   | )   |
| Washington, DC 20520; and                          | )   |
|                                                    | )   |
| JANICE L. JACOBS,                                  | )   |
|   in her official capacity as                      | )   |
|   U.S. Assistant Secretary of State                | )   |
|   for Consular Affairs                             | )   |
| 2201 C Street NW                                   | )   |
| Washington, DC 20520,                              | )   |
|                                                    | )   |
| Defendants.                                        | )   |
|                                                    | )   |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs Leneuoti Fiafia Tuaua, Va'aleama Tovia Fosi, Fanuatanu Fauesala Lifa Mamea and his minor children M.F.M., L.C.M., and E.T.M, Taffy-lei T. Maene, Emy Fiatala Afalava ("the Individual Plaintiffs"), and Samoan Federation of America, Inc. (collectively, "Plaintiffs"), for their Complaint against the United States, the U.S. Department of State ("State Department"), U.S. Secretary of State Hillary Rodham Clinton, and U.S. Assistant Secretary of State Janice L. Jacobs (collectively, "Defendants"), allege as follows:

### NATURE OF THE ACTION

1. In this action, Plaintiffs seek a declaratory judgment that the Citizenship Clause of the Fourteenth Amendment to the United States Constitution applies throughout the United States, including the U.S. territory of American Samoa.

2. The Citizenship Clause provides: "All persons born . . . in the United States, and

subject to the jurisdiction thereof, are citizens of the United States . . . ."  U.S. Const. amend. XIV, § 1, cl. 1.

3.      The Samoan islands are an archipelago located in the South Pacific, midway between Hawaii and New Zealand.  The eastern islands comprise the U.S. territory of American Samoa, which the United States first claimed in 1900; the western islands comprise the independent nation of Samoa.

4.      The U.S. territory of American Samoa is within the limits and under the jurisdiction of the United States.

5.      The Individual Plaintiffs were born in American Samoa.  Therefore, they are U.S. citizens by virtue of the Citizenship Clause.

6.      The Defendants recognize that the Individual Plaintiffs are Americans, but deny that they are U.S. citizens.  Instead, the Defendants classify the Individual Plaintiffs as so-called "non-citizen nationals" of the United States, as reflected in Section 308(1) of the Immigration and Nationality Act of 1952 ("INA") (codified at 8 U.S.C. § 1408(1)) and the State Department's Foreign Affairs Manual ("FAM") at 7 FAM § 1125.1(b)-(c).

7.      The State Department has given effect to the "non-citizen national" classification by imprinting a disclaimer of citizenship known as "Endorsement Code 09" in the U.S. passports issued to persons born in American Samoa, including the Individual Plaintiffs.  Endorsement Code 09 states: "THE BEARER IS A UNITED STATES NATIONAL AND NOT A UNITED STATES CITIZEN."  *See, e.g.*, Ex. A at 2 (endorsement page of Plaintiff Tuaua's passport).

8.      Persons born in American Samoa who are classified as "non-citizen nationals" of the United States do not have the same rights and privileges as do persons classified as "citizens" of the United States.  Among other things, many federal, state, and municipal laws require that a

person be a U.S. citizen in order to enjoy certain civil, political, and economic liberties, such as the right to vote, serve on a jury, bear arms, and hold certain forms of public sector employment.

9. Plaintiffs seek a declaratory judgment that persons born in American Samoa are citizens of the United States by virtue of the Citizenship Clause, and that INA § 308(1) and the State Department's policy and practice of imprinting Endorsement Code 09 in such persons' passports are unconstitutional. Plaintiffs also seek an injunction restraining the State Department from imprinting Endorsement Code 09 in the passports of persons born in American Samoa and requiring that it issue new passports to the Individual Plaintiffs that do not otherwise disclaim that they are citizens of the United States, in order to ensure that their citizenship is acknowledged by those who look to the State Department's issuance of a U.S. passport as conclusive proof of U.S. citizenship.

## PARTIES

10. a. Plaintiff Leneuoti FiaFia Tuaua was born in the U.S. territory of American Samoa in 1951; he currently resides in Faga'alu, American Samoa.

b. The Defendants do not recognize Mr. Tuaua as a citizen of the United States. To the contrary, the Defendants have issued a U.S. passport to Mr. Tuaua that is imprinted with Endorsement Code 09, which states that he is not a citizen of the United States. *See* Ex. A.

c. From 1969 to 1976, Mr. Tuaua lived in Daly City, California. While attending Skyline College in California, Mr. Tuaua registered for the military draft. At the same time, Mr. Tuaua was ineligible to vote under California law because he was not recognized as a citizen of the United States. Mr. Tuaua was interested in pursuing a career in law enforcement in California, and he scored well on entrance examinations at the California Highway Patrol and the

San Mateo County Sheriff's Office.  However, only U.S. citizens and permanent resident aliens who have applied for citizenship are eligible to serve as peace officers in California.  *See* Cal Gov. Code. § 1031.  Mr. Tuaua moved back to American Samoa and pursued a law enforcement career there, retiring in 2007 after 30 years of distinguished service, including many years of service as Marshal for the High Court of American Samoa.

        d.      Mr. Tuaua would like to obtain a U.S. passport recognizing that he is a citizen, so that he can enjoy the same rights and benefits and be eligible for the same opportunities as all other persons born in the United States. In addition, Mr. Tuaua has two young children, ages 10 and 15, and he would like them to grow up having all of the opportunities of U.S. citizens and not suffer the burdens and harms of being classified as "non-citizen nationals."

    11.    a.      Plaintiff Va'aleama Tovia Fosi was born in the U.S. territory of American Samoa in 1965; he currently lives in Honolulu, Hawaii.

        b.      The Defendants do not recognize Mr. Fosi as a citizen of the United States.  To the contrary, the Defendants have issued a U.S. passport to Mr. Fosi imprinted with Endorsement Code 09, which states that he is not a citizen of the United States.

        c.      When he was a high school senior in American Samoa, Mr. Fosi was recruited by the U.S. Army to join its early entry program.  In 1983, Mr. Fosi enlisted in the U.S. Army Reserves on active duty status while attending American Samoa Community College.  In 1985, Mr. Fosi took inactive status in the Reserves when he transferred to the University of Hawaii at Manoa.  While in college, Mr. Fosi sought part-time employment, but discovered that because the Defendants classified him as a "non-citizen national," he was ineligible for federal work study programs and certain other federal employment opportunities.  In 1987, Mr. Fosi was

commissioned as an officer in the Hawaii Army National Guard.  In 1993, he transferred to the U.S. Army Reserve in Hawaii.  In 1994, he was honorably discharged as a First Lieutenant.

       d.     Because U.S. citizenship is a requirement for service as an officer in the Hawaii National Guard, Mr. Fosi believed that he had been naturalized in 1987 in connection with his military service.  However, when Mr. Fosi renewed his U.S. passport in 1999, he discovered that the Defendants had imprinted his passport with Endorsement Code 09, which states that he is not a U.S. citizen.  When he expressed surprise and disappointment to the passport officer who gave him his passport, Mr. Fosi was informed that regardless of his military service, the State Department does not recognize him as a U.S. citizen.

       e.     Because the Defendants do not recognize Mr. Fosi as a U.S. citizen, and because he cannot obtain a U.S. passport proving that he is, Mr. Fosi is denied the right to vote and the right to bear arms under Hawaii law.  *See, e.g.*, Haw. Const. art. II, § 1 (right to vote); Haw. Rev. Stat. § 134-2(d) (restricting issuance of firearms permits to U.S. citizens and select aliens).

       f.     Mr. Fosi would like to obtain a U.S. passport recognizing that he is a citizen so that he can enjoy the same rights and benefits and be eligible for the same opportunities as all other persons born in the United States, including the rights to vote and to bear arms.

12.    a.     Plaintiff Fanuatanu F. L. Mamea was born in the U.S. territory of American Samoa in 1941.  He brings this action on behalf of himself and his three minor children, M.F.M., age 5; L.C.M., age 4; and E.T.M., age 2, all of whom were born in American Samoa and who reside with Mr. Mamea in Tafuna, American Samoa.

       b.     The Defendants do not recognize Mr. Mamea or his minor children as

citizens of the United States.  To the contrary, the Defendants have issued U.S. passports to Mr. Mamea and his minor children imprinted with Endorsement Code 09, which state that they are not citizens of the United States.

       c.     In 1964, Mr. Mamea enlisted in the U.S. Army while living in Hawaii.  In 1965, he applied to join the U.S. Special Forces, but, according to his supervisors, his application was denied because the United States did not recognize him as a citizen.  Mr. Mamea later served in Vietnam, where he sustained serious injuries during combat for which he was awarded two Purple Hearts.  Mr. Mamea was honorably discharged in 1984.

       d.     Prior to returning to American Samoa in 1984, Mr. Mamea resided in the states of Hawaii, California, Washington, and South Carolina for approximately 20 years.  During this time, Mr. Mamea was unable to vote in state and federal elections because the Defendants did not, and still do not, recognize him as a U.S. citizen.

       e.     Mr. Mamea has a combined disability rating of 80% based on complications from his combat injuries.  In the past, Mr. Mamea has had to travel to Hawaii to receive medical care at the Veterans Affairs hospital.  He expects that he will have to undertake similar travel in the future.  Because Mr. Mamea's wife is a Tongan national, she is unable to join him in Hawaii to help with his care unless she first obtains a visa.  To obtain an immigration visa, Mrs. Mamea would have to wait several years for her priority number to be called, whereas if Mr. Mamea were recognized as a citizen, his wife would be eligible for a K-3 non-immigrant visa during the processing of her immigration application, and she could travel to Hawaii immediately to assist Mr. Mamea when he seeks medical care there.  In addition, upon approval of her immigration visa application, there would be no waiting period for her to be able to receive her visa.

f.       Mr. Mamea would like to obtain a U.S. passport recognizing that he is a U.S. citizen so that he can receive the same rights and benefits and be eligible for the same opportunities as all other persons born in the United States, including the ability to obtain immigration priority for his spouse.  Mr. Mamea also wants his children to grow up having all of the opportunities of U.S. citizens and not suffer the burdens and harms of being classified as "non-citizen nationals."

13.       a.       Plaintiff Taffy-lei T. Maene was born in the U.S. territory of American Samoa in 1978; she currently lives in Seattle, Washington.

b.       The Defendants do not recognize Ms. Maene as a citizen of the United States.  To the contrary, when the Defendants issued Ms. Maene a U.S. passport in 1995 under her former name, her passport was imprinted with Endorsement Code 09, which states that she is not a citizen of the United States.

c.       In February 2011, Ms. Maene was hired as a Licensing Services Representative by the Washington State Department of Licensing.  In January 2012, two weeks before the end of her one-year probationary period, Ms. Maene was required to produce a U.S. passport or other evidence demonstrating her citizenship as a condition of being retained as a permanent employee.  Ms. Maene was unable to do so because the Defendants do not recognize her as a citizen.  Ms. Maene was released from her job and informed by her employer that the only reason she was being denied permanent employment was because she could not demonstrate that she was a U.S. citizen.  The loss of her job deprived Ms. Maene of her salary and her health insurance.  Subsequently, Ms. Maene has been deterred from applying for federal positions whose job postings state that U.S. citizenship is a prerequisite for consideration.

d.       Although Ms. Maene has been a resident of Washington State since 2006,

she is ineligible to vote under Washington law because the Defendants do not recognize her as a U.S. citizen and will not provide her with a passport proving that she is.  In 2010, Ms. Maene sought to obtain an Enhanced Driver's License to facilitate travel to Canada, but was informed by Washington State officials that she is ineligible to obtain such a license because she is not recognized as a U.S. citizen.

   e. Ms. Maene would like to sponsor her mother, who is a national of the independent nation of Samoa, for immigration so she can join Ms. Maene in Washington State, but is unable to do so because the Defendants do not recognize Ms. Maene as a citizen.

   f. Ms. Maene would like to obtain a U.S. passport recognizing she is a citizen so that she can enjoy the same rights and benefits and be eligible for the same opportunities as all other persons born in the United States, such as voting, seeking and maintaining employment for which citizenship is a requirement, and sponsoring her mother for immigration purposes.

  14. a. Plaintiff Emy Fiatala Afalava was born in the U.S. territory of American Samoa in 1964, and currently resides in Tafuna, American Samoa.

   b. The Defendants do not recognize Mr. Afalava as a citizen of the United States.  To the contrary, the Defendants issued Mr. Afalava a U.S. passport in 2012 imprinted with Endorsement Code 09, stating that he is not a citizen of the United States.

   c. When Mr. Afalava was a high school senior in American Samoa, he was recruited by the U.S. Army to join the U.S. Army Reserves, enlisting on reserve status in 1981.  In 1985, Mr. Afalava transferred into the active duty U.S. Army and was stationed in Fort Hood, Texas.  In 1990, Mr. Afalava was deployed as part of Operations Desert Shield and Desert Storm, serving in the infantry during the Liberation of Kuwait.  Mr. Afalava also served overseas

in Germany and Korea before being honorably discharged in 1996.  In 2010, Mr. Afalava was

diagnosed with post-traumatic stress disorder related to his experiences during Operations Desert

Shield and Desert Storm.

           d.     Before returning to American Samoa in 1999, Mr. Afalava resided in the

continental United States for approximately 13 years, including in Fort Hood, Texas; Fort Sill,

Oklahoma; and San Diego, California.  Because the Defendants do not recognize Mr. Afalava as

a U.S. citizen, he could not obtain a U.S. passport proving his citizenship and was unable to vote

during this time.  For example, he could not join his infantry colleagues, with whom he had

served during the 1991 Liberation of Kuwait, in going to the polls to vote in the 1992

presidential election.  The fact that the Defendants do not recognize Mr. Afalava's citizenship

was, and continues to be, emotionally distressing to him.

           e.     Mr. Afalava would like to obtain a U.S. passport recognizing that he is a

citizen so that he can enjoy the same rights and benefits and be eligible for the same

opportunities as all other persons born in the United States.

    15.    a.     Plaintiff Samoan Federation of America, Inc. (hereafter, "Samoan

Federation") is a 501(c)(3)  non-profit organization based in Carson, California.  The Samoan

Federation is a social services organization that serves the Samoan community in the greater Los

Angeles area.  Founded in 1965, it is one of the oldest Samoan organizations in the continental

United States.

           b.     The Samoan Federation's activities include helping promote the political

empowerment of the Samoan community in California.  The Samoan Federation holds regular

voter registration drives during election years and is already planning its drives for the 2012

election.  Recognition by the United States that all persons born in American Samoa are U.S.

citizens would significantly advance the Samoan Federation's efforts to increase the political voice of the Samoan community.

c. The Samoan Federation also expends some of its limited resources helping members of the Samoan community with the complex naturalization process and family immigration issues. For example, the Samoan Federation runs a weekly English-as-a-Second-Language class for senior citizens that is intended, in part, to prepare Samoan speakers for the naturalization exam and interview. The Samoan Federation also runs a referral service for individuals who are classified as "non-citizen nationals" and who require naturalization or other assistance. If the Defendants were to recognize that all persons born in American Samoa are U.S. citizens, the Samoan Federation would not have to divert its limited resources to helping persons classified as "non-citizen nationals" to naturalize, and it could better assist them with other needs.

16. The United States, which exercises sovereignty over the U.S. territory of American Samoa, is a Defendant based on the actions and conduct of its agents, which include but are not limited to the U.S. Department of State, the Secretary of State, and the Assistant Secretary of State for Consular Affairs.

17. Defendant U.S. Department of State ("State Department") is an executive department of the United States. The State Department, through its Bureau of Consular Affairs, is responsible for the issuance of United States passports. The State Department's headquarters is located in Washington, D.C.

18. Defendant Hillary Rodham Clinton is being sued in her official capacity as the Secretary of State. Under federal law, Secretary Clinton or her designee is directly responsible for the execution and administration of the statutes and regulations governing the issuance of

U.S. passports. *See* 22 U.S.C. § 211A. Secretary Clinton "accomplishes this function through the Bureau of Consular Affairs . . . ." 7 FAM § 1311(e).

19.     Defendant Janice Jacobs is being sued in her official capacity as the Assistant Secretary of State for Consular Affairs. In that capacity, Ambassador Jacobs is responsible for the State Department's Bureau of Consular Affairs and the creation of policies and procedures relating to the issuance of passports. *See* 1 FAM § 251.1(d). Accordingly, she is Secretary Clinton's designee as to the execution and administration of the statues and regulations governing the issuance of U.S. passports.

## JURISDICTION AND VENUE

20.     This action seeks declaratory relief under the Federal Declaratory Judgment Act of 1934, 28 U.S.C. §§ 2201-2202.

21.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs' causes of action arise under the U.S. Constitution. Plaintiffs also seek review under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, because the State Department's practice of placing Endorsement Code 09 in the passports of persons born in American Samoa is contrary to their constitutional rights, and is also arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

22.     Sovereign immunity has been waived by 5 U.S.C. § 702.

23.     Venue is proper in this district under 28 U.S.C. § 1391(e).

## FACTUAL ALLEGATIONS

### American Samoa's History as Part of the United States

24.     The United States claimed American Samoa pursuant to the Tripartite Convention of 1899 among the United States, Great Britain, and Germany.  *See* 31 Stat. 1878 (ratified Feb. 16, 1900).

25.     The American flag was raised over American Samoa on April 17, 1900, during a ceremony in which the traditional leaders of the islands of Tutuila and Aunu'u signed Deeds of Cession formally ceding sovereignty of their islands to the United States.  *See* 48 U.S.C. § 1661. Similar Deeds of Cession were signed by the traditional leaders of the Manu'a islands in 1904. *See id.*  In 1925, federal law recognized the atoll of Swains Island as part of American Samoa. *See id.* § 1662.

26.     Over the past 112 years, American Samoa's ties to the rest of the United States have strengthened significantly as American Samoa has been integrated into the nation's political, economic, and cultural identity.

27.     During American Samoa's first 51 years as part of the United States, it was administered by the U.S. Navy, with limited self-governance.  In 1951, authority was transferred to the Department of the Interior, which retains general administrative supervision to this day.  In 1967, the Secretary of the Interior approved the Constitution of American Samoa, establishing a tripartite government with a popularly elected bicameral legislature, an appointed governor, and an independent judiciary appointed by the Secretary.  In 1977, the Secretary of the Interior provided for a popularly elected Governor.  In 1978, Congress enacted legislation providing for a non-voting Delegate to represent American Samoa in the U.S. House of Representatives.

28.     According to the U.S. Census Bureau, when American Samoa became part of the

United States in 1900, its population was just over 5,600.  Since then, its resident population has grown nearly tenfold to more than 55,500.  Many generations of American Samoans also now live throughout the rest of the United States.

29.      When American Samoa first became a part of the United States, there was no public education system to speak of.  Today, American Samoa has twenty-two primary schools, six secondary schools, and a community college in the public education system, with a curriculum reflecting U.S. educational standards.

30.      In 1900, the only meaningful way to travel or otherwise communicate between American Samoa and the rest of the United States was by ship.  Today, the Internet and other technological advances allow instantaneous communication between American Samoa and the rest of the United States.   Regular flights between American Samoa's capital of Pago Pago and Honolulu have furthered American Samoa's integration into the United States.

31.      American Samoans have served in the U.S. Armed Forces since the islands first became part of the United States.  As early as July 1900, the Navy Commandant stationed in American Samoa was authorized to enlist 58 Samoans as "Landsmen" in the U.S. Navy to form the Fita Fita Guard, which supported the U.S. Navy during 51 years of naval administration in American Samoa.  American Samoans have served the nation during every major war of the 20th and 21st  Centuries.  Today, American Samoa's enlistment rate is among the highest in the nation and, on a per capita basis, American Samoa has made a greater sacrifice in Iraq and Afghanistan than has any other U.S. territory or state.  The U.S. Army has a full-time recruiting station in American Samoa, and recruiters from other military branches also make regular recruiting visits.  Supporting these efforts, American Samoa's six public high schools host U.S. Army Junior Reserve Officer Training Corp ("ROTC") programs, and the American Samoa

Community College hosts a U.S. Army ROTC program. The U.S. Military Academy, the U.S. Naval Academy, the U.S. Air Force Academy, and the U.S. Merchant Marine Academy each reserve space for two students from American Samoa to be appointed and enrolled.

32. American Samoa is home to a multimillion dollar U.S. Army Reserve Center named in honor of the late Sergeant First Class Konelio Pele, an American Samoan who was awarded a Silver Star during the Vietnam War for his heroic efforts saving the lives of fellow Americans. American Samoa also supports a Community-Based Outpatient Clinic as part of the U.S. Department of Veterans Affairs Pacific Islands Health Care System. The U.S. Coast Guard has a Marine Safety Detachment Unit based in American Samoa.

33. The federal government has a strong civilian presence in American Samoa, with numerous federal agency offices in the territory. Like other Americans, American Samoans participate in and benefit from many federal programs.

34. Congress has established the National Park of American Samoa as part of the National Park System. Twenty-three locations in American Samoa are also listed on the National Register of Historic Places, two of which – Government House and the World War II Blunts Point Battery – have received the official designation of National Historic Landmark. American Samoa's Fagatele Bay is recognized as a National Marine Sanctuary.

35. The United States has taken a number of actions reflecting and celebrating American Samoa's integration into the nation. For example, on April 17, 2000, the United States Postal Service issued a stamp commemorating the centennial of American Samoa becoming a part of the United States. In 2008, the Postal Service released a stamp recognizing the flag of American Samoa as part of the "Flags of Our Nation" series honoring the flags of the 50 states, the five territories, and the District of Columbia. In July 2009, the United States Mint released

the American Samoa Quarter as part of its D.C. & U.S. Territories Quarters Program, following the popular 50 State Quarters Program.  The Mint is also scheduled to release a quarter depicting the National Park of American Samoa in 2020 as part of its America the Beautiful Quarters Program.

### The Citizenship Clause of the Fourteenth Amendment

36.    The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons born . . . in the United States, and subject to the jurisdiction thereof, are citizens of the United States . . . ."  U.S. Const. amend. XIV, § 1.

37.    Prior to ratification of the Fourteenth Amendment, the U.S. Supreme Court considered whether the term "the United States," as used elsewhere in the Constitution, "designate[s] the whole, or any particular portion of the American empire."  *Loughborough v. Blake*, 18 U.S. 317, 319 (1820) (Marshall, C.J.).  In its decision, the Court stated: "Certainly this question can admit of but one answer.  It is the name given to our great republic, which is composed of States *and territories*.  The [D]istrict of Columbia, *or the territory west of the Missouri*, is not less within the United States than Maryland or Pennsylvania . . . ."  *Id.* (emphases added).

38.    In 1866, when the U.S. Senate was debating the Fourteenth Amendment, Senator Jacob Howard introduced the text of the Citizenship Clause and stated his belief that the Clause "settles the great question of citizenship and removes all doubt as to what persons are or are not citizens of the United States."  Cong. Globe, 39th Cong., 1st Sess. 2890, 2890 (1866).  According to Senator Howard, he and other proponents of the Citizenship Clause "desired to put this question of citizenship and the rights of citizens . . . beyond the legislative power . . . ."  *Id.* at 2896.

39.     During this same Senate debate, Senator Lyman Trumbull, Chairman of the

Senate Judiciary Committee, stated that the Fourteenth Amendment's "second section [*i.e.*, the

Apportionment Clause] refers to no persons except those in the States of the union; but the first

section refers *to persons everywhere*, whether in the States *or in the Territories* or in the District

of Columbia."  *Id.* at 2894 (emphases added).

40.     In 1898, the U.S. Supreme Court stated that "[t]he [Fourteenth] [A]mendment, in

clear words and in manifest intent, includes the children born, *within the territory* of the United

States, . . . of whatever race or color, domiciled within the United States."  *United States v. Wong

Kim Ark*, 169 U.S. 649, 693 (1898) (emphasis added).  The Court also stated that "[t]he

[F]ourteenth [A]mendment . . . has conferred no authority upon [C]ongress to restrict the effect

of birth, declared by the [C]onstitution to constitute a sufficient and complete right to

citizenship."  *Id.* at 703.

## The Defendants Refuse to Recognize That Persons Born in American Samoa Are U.S. Citizens under the Citizenship Clause, Classifying Them Instead as "Non-Citizen Nationals"

41.     Despite the text and history of the Citizenship Clause of the Fourteenth

Amendment, the Defendants have refused to recognize that persons born in the U.S. territory of

American Samoa are guaranteed U.S. citizenship by virtue of their birth within the United States.

42.     The Defendants have treated the citizenship status of persons born in the U.S.

territories of American Samoa, Puerto Rico, Guam, the U.S. Virgin Islands, and the Northern

Mariana Islands as subject to political determinations by the elected branches of the federal

government.

43.     In 1917, Congress enacted a statute recognizing the citizenship of persons living

in Puerto Rico at the time it was acquired by the United States, and persons born there

subsequently.  Congress did the same for the inhabitants of the U.S. Virgin Islands in 1927 and

for the inhabitants of Guam in 1950.  In 1986, Congress enacted a law recognizing the

inhabitants of the Northern Mariana Islands as U.S. citizens from the moment the United States

established sovereignty over the islands.

44.     Congress has never enacted a statute recognizing the citizenship of American

Samoans.  Instead, Congress enacted Section 204(a) of the Nationality Act of 1940, which

provided that persons born in American Samoa "shall be recognized as nationals, but not

citizens, of the United States at birth."  This provision was reenacted in 1952 as INA § 308(1)

and subsequently codified at 8 U.S.C. § 1408(1).

45.     Persons born in American Samoa are the only individuals whom the Defendants

classify as "non-citizen nationals."

46.     Under federal law, unless persons born in American Samoa obtain citizenship

through parents who are already recognized as citizens, the only way they can be recognized as

U.S. citizens is through naturalization.

47.     Until 1952, so-called "non-citizen nationals" of Samoan descent were not even

permitted to naturalize under federal immigration law.  Today, the lengthy, costly, and

burdensome nature of the naturalization process deters and prevents many eligible adults from

pursuing the naturalization process; moreover, minors are not permitted to apply for

naturalization.  The naturalization process can take a year or more to complete, with no

guarantee of success, as the ultimate citizenship determination is made on a case-by-case basis

by an officer of the U.S. Citizenship and Immigration Services ("USCIS"), an agency of the U.S.

Department of Homeland Security.

48.     Although persons born in American Samoa who are classified by Defendants as

"non-citizen nationals" are Americans, they are treated the same as foreign nationals for most aspects of the naturalization process:

a.      "Non-citizen nationals," like foreign nationals, must first establish residency for a period of three months in a USCIS district before applying to naturalize.  There are no such districts in American Samoa, which means that a resident of American Samoa who wishes to apply to naturalize must bear the substantial costs and disruption of relocating to, and establishing residency in, another part of the United States.  *See* 8 U.S.C. § 1436.

b.      "Non-citizen nationals," like foreign nationals, must take and pass the USCIS English and civics test, even though the public education curriculum in American Samoa is taught in English and reflects U.S. educational standards for English and language arts, American history, and American government.

c.      "Non-citizen nationals," like foreign nationals, must submit to fingerprinting and a determination of their good moral character, including an in-person interview.

d.      "Non-citizen nationals" must take the same Oath of Allegiance that is required of foreign nationals, which includes an affirmation that they "absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state or sovereignty, of whom or which [they] have heretofore been a subject or citizen . . . ."  8 C.F.R. § 1337.1.  Yet by definition, all "non-citizen nationals" necessarily "owe[] permanent allegiance to the United States," 8 U.S.C. § 1101(a)(22), and many have already sworn an oath to defend the Constitution through military or other federal government service.

e.      "Non-citizen nationals" of the United States, like foreign nationals, must pay government fees currently totaling $680, in addition to any other expenses associated with

- 19 -

the naturalization process.

## The State Department Will Not Provide the Individual Plaintiffs with U.S. Passports Recognizing That They Are U.S. Citizens

49.     As reflected in the State Department's Foreign Affairs Manual, it is the State Department's policy that the Fourteenth Amendment's Citizenship Clause does not apply to persons born in American Samoa.  *See* 7 FAM § 1125.1(b) ("[T]he citizenship provisions of the Constitution do not apply to persons born there [*i.e.*, American Samoa].").

50.     It is also the State Department's policy to recognize only "non-citizen U.S. nationality for the people born . . . in American Samoa." 7 FAM § 1125.1(d).  This policy relies upon INA § 308(1), which provides that persons born in American Samoa "shall be nationals, but not citizens, of the United States at birth[.]" 8 U.S.C. § 1408(1); *see* 7 FAM § 1125.1(d)-(e).

51.     A U.S. passport is the only federal document for which a member of the general public may apply in order to obtain official recognition that he or she is a U.S. citizen by virtue of birth in the United States.

52.     U.S. passports may only be issued by the State Department.

53.     According to the State Department, "U.S. citizens and U.S. non-citizen nationals who have satisfactorily established their identity and citizenship/nationality . . . are entitled to U.S. passports." 7 FAM § 1313(a).  However, "nationals of the United States who are not citizens" are only entitled to "U.S. passports with appropriate endorsements." *Id.* § 1111(b)(1).

54.     It is the State Department's policy and practice to imprint Endorsement Code 09 in the U.S. passports of persons born in American Samoa who are classified as "non-citizen nationals." *See* 7 FAM § 1130 App'x H ¶ (c). Endorsement Code 09 states: "THE BEARER IS A UNITED STATES NATIONAL AND NOT A UNITED STATES CITIZEN." *Id.*

55.     The State Department has imprinted Endorsement Code 09 on the U.S. passports

of the Individual Plaintiffs.

56.     The Individual Plaintiffs are unable to obtain U.S. passports that are not imprinted with Endorsement Code 09 unless they successfully undertake the naturalization process.

57.     Persons born in American Samoa are the only individuals who are issued United States passports stating that they are *not* citizens of the United States.

### The Defendants' Refusal to Recognize the U.S. Citizenship of the Individual Plaintiffs Causes Material Harms

58.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 57.

59.     The Defendants' refusal to recognize the Individual Plaintiffs as U.S. citizens by virtue of the Citizenship Clause is a deprivation of their constitutional rights and is therefore a material injury.

60.     The Defendants' classification of the Individual Plaintiffs as "non-citizen nationals" instead of as "citizens" also imposes material dignitary and emotional harms upon the Individual Plaintiffs.  The formal legal classification of "non-citizen national," which is limited to persons born in American Samoa, stigmatizes the Individual Plaintiffs as inferior and subordinate to their fellow Americans.

61.     The Defendants' classification of the Individual Plaintiffs as "non-citizen nationals" instead of as "citizens" also imposes economic and legal harms upon the Individual Plaintiffs.  Because of Defendants' actions, the Individual Plaintiffs are denied recognition as U.S. citizens by federal, state, and local governments, foreign governments, private employers, and other entities.  Because the Defendants have classified them as "non-citizen nationals," the Individual Plaintiffs are required to navigate a confusing patchwork of federal and state laws that often treat them less favorably than citizens, and sometimes even less favorably than permanent resident aliens.  Laws that limit the civil, political, and economic liberties of "non-citizen

nationals" affect the life choices of Individual Plaintiffs, including decisions regarding where to live and what careers to pursue. This is particularly true for the minor Plaintiffs, who do not have the same opportunities available to them as do children born in other parts of the United States.

62. The laws of many U.S. states deny "non-citizen nationals" the right to vote in federal, state, and local elections, the right to hold public office, and the right to serve on a jury. Plaintiffs Fosi and Maene, for example, are unable to exercise these rights because they currently reside in the states of Hawaii and Washington, respectively. *See, e.g.*, Haw. Const. art. II, § 1 (right to vote); Wash. Const. art. III, § 25 (right to hold office); Wash. Rev. Code § 2.36.070 (right to serve as juror).

63. State and federal laws also limit the employment opportunities of "non-citizen nationals." Many states and municipalities have citizenship requirements for law enforcement officers, firefighters, and other public service positions. *See, e.g.*, Cal. Gov. Code § 1031 (public safety officers); Wash. Rev. Code §§ 41.08.060 & 41.08.070 (firefighters and civil service); Haw. Rev. Stat. § 121-14 (Hawaii National Guard officers); 24 Pa. Stat. § 11-1109 (public school teachers). At the federal level, citizenship is required for service as an officer in the U.S. Armed Forces and the U.S. Special Forces. These and other employment restrictions limit the career opportunities for Individual Plaintiffs. For example, as stated in Paragraph 13(c) above, Plaintiff Maene recently lost her job as a Licensing Services Representative at the Washington State Department of Licensing because the United States classifies her as a "non-citizen national." Similarly, as stated in Paragraph 10(c) above, when Plaintiff Tuaua resided in California, he was ineligible to apply for law enforcement positions despite having performed well on qualifying tests.

64.     "Non-citizen nationals" are treated less favorably than citizens when it comes to "sponsoring" foreign-national relatives for immigration visas because "non-citizen nationals" are generally considered equivalent to "lawful permanent residents" for purposes of immigration preference.  As relevant here, USCIS permits U.S. citizens to sponsor foreign national spouses, parents, and siblings to obtain an immigration visa, and there is no waiting requirement for a U.S. citizen's spouse or parent after the immigration visa application has been approved.  In contrast, "non-citizen nationals" may only sponsor spouses, but not parents or siblings. Moreover, the spouses of "non-citizen nationals" cannot receive a visa, even after their immigration application has been approved, until they reach their immigration priority date; according to the June 2012 Visa Bulletin, the current wait is more than two years.  These restrictions have burdened Individual Plaintiffs whose immediate family members are foreign nationals.  For example, Plaintiff Maene, as stated in Paragraph 13(e) above, is unable to sponsor her foreign-national mother to obtain an immigration visa.  And although Plaintiff Mamea, as stated in Paragraph 12(e) above, may sponsor his foreign-national wife, she would likely have to wait several years to receive an immigration visa.

65.     The laws of some U.S. states deny "non-citizen nationals" the right to bear arms. For example, as stated in Paragraph 11(e) above, Hawaii law does not permit Plaintiff Fosi to obtain or possess a firearm, even though he served as an officer in the Hawaii National Guard and U.S. Army Reserve.  *See* Haw. Rev. Stat. § 134-2(d).

66.     "Non-citizen nationals" who travel internationally must rely on U.S. passports that expressly state, via Endorsement Code 09, that they are not U.S. citizens.  In some cases, this creates special burdens; for example, independent Samoa requires that "non-citizen nationals" purchase a special visitor's permit that is not required for visiting U.S. citizens.  In all

cases, Endorsement Code 09 creates uncertainty about how foreign officials will react when presented with an anomalous U.S. passport stating that the bearer is *not* a U.S. citizen.  Thus, for example, Plaintiff Fosi is deterred from exercising his right to travel abroad because his U.S. passport states that he is not a U.S. citizen, and he fears the confusion that Endorsement 09 might create for foreign officials.

## CLAIMS FOR RELIEF

## COUNT I

### (INA § 308(1) Violates the Fourteenth Amendment)

67.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 66.

68.     By classifying persons born in American Samoa as nationals, but not citizens, of the United States, INA § 308(1) violates the Fourteenth Amendment, both on its face and as applied to the Individual Plaintiffs through the State Department's policy and practice of imprinting Endorsement Code 09 in the passports issued to persons born in American Samoa.

69.     Plaintiffs therefore seek entry of a judgment declaring that INA § 308(1) violates the Fourteenth Amendment on its face and as applied to the Individual Plaintiffs, and enjoining Defendants from placing Endorsement Code 09 in the passports of persons born in American Samoa.

## COUNT II

### (The State Department's Policy and Practice of Refusing to Recognize the Birthright Citizenship of Persons Born in American Samoa Violates the Fourteenth Amendment)

70.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 69.

71.     By classifying persons born in American Samoa as nationals, but not citizens, of the United States, the State Department's policy that "the citizenship provisions of the Constitution do not apply to persons born [in American Samoa]," as reflected in 7 FAM

§ 1125.1(b) and (d), violates the Fourteenth Amendment, both on its face and as applied through the Department's policy and practice of imprinting Endorsement Code 09 in passports issued to persons born in American Samoa.

72.     Plaintiffs therefore seek entry of a judgment declaring that the State Department's policy, as reflected in 7 FAM § 1125.1(b) and (d), violates the Fourteenth Amendment on its face and as applied to the Individual Plaintiffs, and enjoining Defendants from placing Endorsement Code 09 in the passports of persons born in American Samoa.

**COUNT III**

**(The State Department's Practice of Placing Endorsement Code 09 in the Passports of Persons Born in American Samoa Violates the Administrative Procedure Act)**

73.     Plaintiffs re-allege and incorporate herein by reference paragraphs 1 through 72.

74.     The State Department's policy and practice of imprinting Endorsement Code 09 in the passports of persons born in American Samoa, including the Individual Plaintiffs, is "contrary to constitutional right" and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A), (B).

75.     Plaintiffs seek entry of a judgment declaring Defendants' practice of imprinting Endorsement Code 09 in the passports of persons born in American Samoa to be in violation of the Administrative Procedure Act, enjoining Defendants from placing Endorsement Code 09 in the passports of persons born in American Samoa, and ordering Defendants to issue new passports to the Individual Plaintiffs that do not contain Endorsement Code 09 and that do not otherwise disclaim that they are citizens of the United States.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Declare that persons born in the U.S. territory of American Samoa are born "in

the United States" for purposes of the Fourteenth Amendment's Citizenship Clause and are therefore U.S. citizens by birth;

B.     Declare that INA § 308(1) violates the Fourteenth Amendment on its face and as applied to classify persons born in the U.S. territory of American Samoa as nationals, but not citizens, of the United States;

C.     Declare that the State Department's policy as reflected in 7 FAM § 1125.1(b) and (d) violates the Fourteenth Amendment on its face and as applied to classify persons born in the U.S. territory of American Samoa as nationals, but not citizens, of the United States;

D.     Declare that the State Department's policy and practice of imprinting Endorsement Code 09 in the passports of persons born in American Samoa violates the Administrative Procedure Act;

E.     Enter a permanent injunction preventing Defendants from taking any action to enforce INA § 308(1) or the State Department's policy as reflected in 7 FAM § 1125.1(b) and (d), including through Defendants' practice of imprinting Endorsement Code 09 in passports issued to persons born in American Samoa;

F.     Order Defendants to issue new passports to the Individual Plaintiffs that do not contain Endorsement Code 09 and that do not otherwise disclaim that they are citizens of the United States;

G.     Award such costs and reasonable attorneys' fees to which the Plaintiffs might be entitled by law; and

H.     Award such other relief as this Court may deem just and appropriate.

Date:  July 10, 2012

Respectfully submitted,

Judith E. Schaeffer (D.C. Bar No. 273177)
Elizabeth B. Wydra (D.C. Bar No. 483298;
  application pending for admission to D.D.C.)
Neil C. Weare (D.C. Bar. No. 997220)
**CONSTITUTIONAL ACCOUNTABILITY
  CENTER**
1200 18th Street, N.W., Suite 501
Washington, D.C.  20036
(202) 296-6889
judith@theusconstitution.org
elizabeth@theusconstitution.org
neil@theusconstitution.org

Robert J. Katerberg (D.C. Bar No. 466325)
Murad Hussain (D.C. Bar No. 999278)
**ARNOLD & PORTER LLP**
555 12th Street, N.W.
Washington, D.C.  20004
(202) 942-5000
Robert.Katerberg@aporter.com
Murad.Hussain@aporter.com

Charles Ala'ilima (WA Bar No. 28006;
  AS Bar Member (unnumbered))
**LAW OFFICE OF
 CHARLES V. ALA'ILIMA, PLLC**
P.O. Box 1118
Nu'uuli, AS 96799
(684) 699-6732
cvalaw@msn.com

*COUNSEL FOR PLAINTIFFS*