UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LENEUOTI FIAFIA TUAUA, *et al.*, | ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) | Civil Action No. 12-1143 (RJL) |
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) |  |
| Defendants. | ) ) ) |  |

### DEFENDANTS' REPLY IN SUPPORT OF
### THEIR MOTION TO DISMISS

Defendants United States of America, United States Department of State (the "Agency"), Hillary Rodham Clinton, in her official capacity as Secretary of State, and Janice L. Jacobs, in her official capacity as Assistant Secretary of State for Consular Affairs ("Defendants" or the "Government"), by and through undersigned counsel, respectfully submit this reply in support of their Motion to Dismiss [ECF No. 9] Plaintiffs'[1] complaint. Plaintiffs' prolix opposition to Defendants' Motion to Dismiss [ECF No. 19] barely addresses Defendants' primary arguments: 1) that the Fourteenth Amendment's text and binding case law interpreting that text dictate that the Citizenship clause does not apply to unincorporated territories; and 2) that Plaintiffs' attempt to state a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 *et seq.* stemming from the Department of State's proper imprinting of passports fails as a matter of law.

---

[1] Plaintiffs are Leneuoti Fiafia Tuaua ("Tuaua"), Va'aleama Tovia Fosi ("Fosi"), Fanuatanu Fauesala Lifa Mamea ("Mamea"), on his own behalf and on behalf of his minor children, M.F.M., L.C.M., and E.T.M., Taffy-Lei T. Maene ("Maene"), Emy Fiatala Afalava ("Afalava") (Tuaua, Fosi, Mamea, Maene, and Afalava are the "Individual Plaintiffs"), and the Samoan Federation of America, Inc. (the "Federation") (the Federation and the Individual Plaintiffs collectively are the "Plaintiffs")

Plaintiffs attempt, without success, to avoid the basic facts and established legal precedent applicable to their complaint, but the plain language of the Fourteenth Amendment and the applicable case law mandate that Plaintiffs' claims fail. Therefore, Plaintiffs' complaint should be dismissed.

   1. **Contrary to Plaintiffs' Arguments, the Plain Language of the Fourteenth Amendment Indicates that *Jus Solis* Citizenship Does Not Apply to the Citizens of American Samoa as American Samoa Is an Outlying, Unincorporated Territory**

In their opposition, Plaintiffs attempt to argue that the Fourteenth Amendment's grant of *jus solis* citizenship "automatically" applies to the people of American Samoa. *See* Pl. Opp. Memo. [ECF No. 18] at 13-19. The Plaintiffs' argument is two-fold: 1) that the Fourteenth Amendment somehow "follows the flag" and applies automatically to American Samoa, *see id.* at 13-19 (discussing the legislative history of the Fourteenth and Thirteenth Amendments); and 2) that American Samoa's status as an unincorporated, outlying territory has no relevance to the determination of whether Fourteenth Amendment birthright citizenship applies to persons born on its soil, *see id.* at 25-32 (arguing that the Insular Cases do not apply to Plaintiffs' claims). Neither of these arguments is convincing and, to find in Plaintiffs' favor on either prong, would require the overturning of well-established, binding precedent and the granting of automatic, birthright citizenship in perpetuity by judicial fiat rather than Congressional action.

As noted in the Government's Motion to Dismiss, an individual may acquire U.S. citizenship at birth (as opposed to a later time through naturalization) by birth in the United States (*jus solis*) or by descent (*jus sanguinis*). The Fourteenth Amendment to the Constitution provides, in pertinent part, that "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. American Samoa, however, is specifically designated as an

2

outlying possession of the United States. INA § 101(a)(29), 8 U.S.C. § 1101(a)(29). Persons born to non U.S. citizen parents in an outlying possession of the United States on or after the possession's date of acquisition by the United States are nationals but not U.S. citizens at birth. INA § 308(1), 8 U.S.C. § 1408(1). Designating such persons as nationals but not citizens of the United States does not violate the Fourteenth Amendment because, as numerous courts have held, the phrase "the United States" does not include the territories of the United States and, therefore, Plaintiffs' claims fail as a matter of law.

      a. Plaintiffs' Discussion of the Legislative History Is Unavailing as the Plain Language of the Constitution and the Relevant Statutes, as Interpreted by the Courts, Controls this Case

Plaintiffs cite (at great length, *see* Pl. Opp. Memo. [ECF No. 18] at 13-18) to statements in the legislative history which, they argue, indicate that the history and purpose of the Citizenship Clause extends to cover territories such as American Samoa and, therefore, automatic birthright citizenship has existed on the islands since their acquisition. First, the language of the Fourteenth Amendment and the relevant statutes in this case, INA § 308(1), 8 U.S.C. § 1408(1) and INA § 101(a)(29), 8 U.S.C. § 1101(a)(29), are clear and there is no need to look to the legislative history. *See, e.g.*, *General Elec. Co. v. Envtl. Prot. Agency*, 360 F.3d 188, 191 (D.C. Cir. 2004) ("[W]e begin and end with the language of [the relevant statute], because when the statutory text is straightforward, there is no need to resort to legislative history") (citing *United States v. Gonzales*, 520 U.S. 1, 6 (1997); *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994); *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)).

Additionally, though, arguments exactly like the ones Plaintiffs make here have been found wanting by courts that have examined them. Specifically, as discussed in the Government's motion, the court in *Rabang v. I.N.S.*, 35 F.3d 1449, 1453 (9th Cir. 1994), found

3

that the Supreme Court's textual analysis in *Downes* determined the meaning of the phrase "the United States" throughout the Constitution. Plaintiffs, however, like the dissent in *Rabang*, attempt to rely on legislative history, the case of *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), and English common law addressing *jus solis* nationality to argue that the Citizenship Clause extends to cover all persons born within the territory of a sovereign nation who owe complete allegiance to that nation. *Compare* Pl. Opp. Memo. [ECF No. 18], *with* 35 F.3d. at 1455-66 (Pregerson, J., dissenting). Plaintiffs' arguments fail for the same reasons that the *Rabang* dissent did. In fact, the *Rabang* majority specifically addressed *Wong Kim Ark*, noting that *Wong Kim Ark* involved a person born in San Francisco, and that as California is indisputably "in the territory" of the United States, the Supreme Court did not define the term "territory" rigorously, nor did it decide whether "territory" in the broader sense of outlying lands under U.S. sovereignty meant "in the United States" under the Fourteenth Amendment. *Rabang*, 35 F.3d at 1453-54. Further, the court's opinion in *Rabang* flagged that *Wong Kim Ark* defined territorial scope of citizenship in ambiguous ways throughout the opinion, and that importation of British common law to interpret the meaning of the Citizenship Clause would be inadvisable, as there are possible differences between "subjects" and "citizens." *Id.* at 1454 & n. 9.

      b. In Addition to *Rabang*, Plaintiffs Fail to Distinguish Even More Recent Courts of Appeal Holdings that Directly Contradict Their Legal Theory

Much of Plaintiffs' argument in their opposition rests on the unsupported contention that the Insular Cases are "outdated" or "limited." But Plaintiffs ignore very recent federal court decisions addressing arguments similar to their own. In fact, Plaintiffs, rather than even attempt to refute the most recent U.S. Court of Appeals case to address a similar claim to their own, relegate their discussion of *Eche v. Holder*, 694 F.3d 1026, 1027-28 (9th Cir. 2012) to a footnote. *See* Pl. Opp. Memo. [ECF No. 18] at 31 n.25. As the Government discussed, in *Eche*, the

plaintiffs/appellants had resided in the Commonwealth of the Northern Mariana Islands. *See id.* at 1028. Upon rejecting the plaintiffs/appellants' claims that the Naturalization Clause applied automatically to those born in the Commonwealth, the *Eche* court noted:

> The Naturalization Clause does not apply of its own force and the governments have not consented to its applicability. The Naturalization Clause has a geographic limitation: it applies "throughout the United States." The federal courts have repeatedly construed similar and even identical language in other clauses to include states and incorporated territories, but not unincorporated territories. In *Downes v. Bidwell*, 182 U.S. 244 (1901), one of the Insular Cases, the Supreme Court held that the Revenue Clause's identical explicit geographic limitation, "throughout the United States," did not include the unincorporated territory of Puerto Rico, which for purposes of that Clause was "not part of the United States." *Id*. at 287. The Court reached this sensible result because unincorporated territories are not on a path to statehood. *See Boumediene v. Bush*, 553 U.S. 723, 757-58 (2008) (citing *Downes*, 182 U.S. at 293). In *Rabang v. I.N.S.*, 35 F.3d 1449 (9th Cir. 1994), this court held that the Fourteenth Amendment's limitation of birthright citizenship to those "born . . . in the United States" did not extend citizenship to those born in the Philippines during the period when it was an unincorporated territory. U.S. Const., 14th Amend., cl. 1; *see Rabang*, 35 F.3d at 1451. Every court to have construed that clause's geographic limitation has agreed. *See Valmonte v. I.N.S.*, 136 F.3d 914, 920-21 (2d Cir. 1998); *Lacap v. I.N.S.*, 138 F.3d 518, 519 (3d Cir. 1998); *Licudine v. Winter*, 603 F. Supp. 2d 129, 134 (D.D.C. 2009).
>
> Like the constitutional clauses at issue in *Rabang* and *Downes*, the Naturalization Clause is expressly limited to the "United States." This limitation "prevents its extension to every place over which the government exercises its sovereignty." *Rabang*, 35 F.3d at 1453.

694 F.3d at 1031.[2]

Another point discussed in *Eche*, however, is the fact that the people of the Commonwealth of the Northern Mariana Islands ("CNMI") received U.S. citizenship by specific Congressional action (and, therefore, not by automatic extension of the Fourteenth Amendment). *See id.* at 1027 (discussing how Congress approved in 1976 the Covenant to Establish a

---

[2]   Plaintiffs presumably relegate their discussion of *Eche* to a footnote as that Court cited to and considered the effect (if any) of the Supreme Court's decision in *Boumediene* on the issue of the limitations of the Constitution to unincorporated, outlying territories. As noted above, the *Eche* court did not articulate any effect on the well-established doctrine of the limitations of the Constitution on unincorporated, outlying territories. 694 F.3d at 1031.

5

Commonwealth of the Northern Mariana Islands in Political Union with the United States (Covenant), the passage of which allowed citizens of the CNMI to become citizens of the United States.) (citing Covenant, Pub. L. No. 94-241, § 301, 90 Stat. 263, 265-66).  Thus, it was action by Congress that granted citizenship to the citizens of the unincorporated, outlying territory of the CNMI, not mere exercise of authority by the United States Government over its physical territory.  This development – exercise of control over a territory but without incorporation into the United States, then Congressional action to confer U.S. citizenship on the citizens of that territory – is not unique to the CNMI, but rather is how U.S. citizenship upon birth in the territory was acquired by the citizens of, for example:

1) Puerto Rico, *see* 8 U.S.C. § 1402;

2) the U.S. Virgin Islands, *see* 8 U.S.C. § 1406; and

3) Guam, *see* 8 U.S.C. § 1407.

Further, other courts (in addition to *Eche*) examining these statutory grants of citizenship by Congress, have declined to find that Fourteenth Amendment *jus solis* citizenship existed prior to Congressional action.  *See, e.g.*, *Ballentine v. United States*, 486 F.3d 806, 813-14 (3d Cir. 2007) (granting motion to dismiss and holding that "[u]nder the unincorporation doctrine developed in the Insular Cases, the Court finds Congress did not exceed its constitutional authority in designating the Virgin Islands as an unincorporated territory in the Revised Organic Act of 1954.").  These decisions further bolster those related to the former outlying, unincorporated territory of the Philippines that the Government discussed in its Motion to Dismiss.  *See* Def. Mot. to Dismiss [ECF No. 9] (noting that the Ninth Circuit's decision in *Rabang* has been followed by the Second Circuit, *Valmonte v. INS*, 136 F.3d 914 (2d Cir. 1998); Third Circuit, *Lacap v. INS*, 138 F.3d 518 (3d Cir. 1998); the Fifth Circuit, *Nolos v. Holder*, 611

F.3d 279 (5th Cir. 2010); and by this Court in *Licudine v. Winter*, 603 F. Supp. 2d 129, 132-34 (D.D.C. 2009) ("Consistent with the rulings of these Circuits [the Ninth, Second, Third, and Fifth], this Court concludes that Licudine's birth in the Philippines during its territorial period does not constitute birth in the United States for purposes of the Citizenship Clause of the Fourteenth Amendment.")).

Here, Plaintiffs argue that this Court should declare that the Fourteenth Amendment somehow automatically confers birthright citizenship on the U.S. nationals of American Samoa. But, as noted above, it is Congress that decides whether and how citizenship applies to unincorporated, outlying territories due to the Constitution's explicit grant of authority in the matters of naturalization to Congress – an authority that Congress has properly exercised through INA § 308(1), 8 U.S.C. § 1408(1) – declaring that persons born in an *outlying possession* of the United States are non-citizen nationals.  Further, Congress has specifically memorialized and declared the status of American Samoa as an *outlying possession* in INA § 101(a)(29), 8 U.S.C. § 1101(a)(29).

Thus, just as the *Eche* court held after analyzing the claims of the residents of the Commonwealth of the Northern Mariana Islands, the Plaintiffs, residents of American Samoa, are not subject to the Citizenship Clause of the Fourteenth Amendment because:  1) American Samoa is an unincorporated territory pursuant to federal statute, *see* INA § 101(a)(29); 8 U.S.C. § 1101(a)(29); 2) American Samoa is not on a clear path to statehood and, in fact, has its own constitution mandating the preservation of its own culture and way of life; therefore, 3) the limitation of the Clause to the "United States" does not extend to American Samoa.  *See Eche*, 694 F.3d at 1031; *see also Downes*, 182 U.S. at 293; *Rabang*, 35 F.3d at 1453.  Therefore, Plaintiffs' claim that the Citizenship Clause of the Fourteenth Amendment extends to American

Samoa fails, and as that claim underpins Plaintiffs' entire complaint, Plaintiffs' complaint should be dismissed.

### c. Plaintiffs' Attack on *Downes* Not Only Ignores the Rest of the Insular Cases, but <u>Subsequent Supreme Court Decisions</u>

Plaintiffs' argument that the Supreme Court's decision in *Downes* should not have any precedential value is incorrect. *See, e.g.*, *Torres v. Com. of Puerto Rico*, 442 U.S. 465, 468-69 (1979) (while determining whether Fourth Amendment protections applied to Puerto Rico, discussing the application of the holding of *Downes*, the concurring opinion, and *Dorr* which together establish the distinction between incorporated and unincorporated territories for purposes of determining what constitutional protections apply). Further, Plaintiffs' reliance on their own personal interpretation of Supreme Court footnotes and legislative history invites citation to Justice Ginsburg's dissent in *Miller v. Albright*, 523 U.S. 420, 467 & n.2, where Justice Ginsburg noted that:

> Nationality and citizenship are not entirely synonymous; one can be a national of the United States and yet not a citizen. 8 U.S.C. § 1101(a)(22). The distinction has little practical impact today, however, for the only remaining noncitizen nationals are residents of American Samoa and Swains Island. *See T. Aleinikoff, D. Martin, & H. Motomura, Immigration: Process and Policy* 974-75, n.2 (3d ed.1995).

Thus, at least one justice of the Supreme Court has reviewed the status of the people of American Samoa, noted the distinction between being a U.S. citizen and a U.S. national, and foregone the opportunity to make any inquiry into any constitutional issue raised.

Further, as Plaintiffs themselves note, numerous other federal courts have looked back to the Insular Cases, including *Downes* and *Dorr*, to determine whether constitutional provisions apply to unincorporated territories and Plaintiffs' argument that these binding decisions from the Supreme Court should be discarded is unavailing. *See, e.g.*, *Eche*, 694 F.3d at 1031; *Ballentine*,

486 F.3d at 813-14; *Rabang*, 35 F.3d at 1453; *Valmonte*, 136 F.3d at 914; *Lacap*, 138 F.3d at 518; *Nolos*, 611 F.3d at 279; and *Licudine*, 603 F. Supp. 2d at 132-34.

Finally, Plaintiffs' citation to cases in this jurisdiction to support their claims is disingenuous at best. First, Plaintiffs cite to a *per curiam* decision of the D.C. Circuit, *Mendoza v. Soc. Sec. Comm'r*, 92 F. App'x 3 (D.C. Cir. 2004), for the proposition that whether the Citizenship Clause applies to a former insular territory is an "open question." The D.C. Circuit, however, stated in dicta that it need not even look at the arguments raised by *amicus* in *Mendoza* – a case where a citizen of the Philippines, not American Samoa, sought a declaration of citizenship – as the other arguments raised by the Government allowed the court to dispose of the case. Thus, the issue is not an "open question" in light of the binding precedent discussed above, but rather the D.C. Circuit opted not to waste its time addressing the appellant's constitutional argument.[3]

Similarly, Plaintiffs stretch the D.C. Circuit's holding in *King v. Morton*, 520 F.2d 1140, 1144 (D.C. Cir. 1975), while ignoring that court's subsequent decision in *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Hodel*, 830 F.2d 374, 384-86 (D.C. Cir. 1987). In *King*, the D.C. Circuit analyzed whether a *U.S. citizen* had the right to a trial by jury for crimes allegedly committed in American Samoa. The D.C. Circuit held that only fundamental constitutional rights can be applicable to American Samoa, *see id.* at 1146, and, finding that this Court had jurisdiction to determine whether trial by jury for a criminal allegation

---

[3] Even Plaintiffs' hypothetical regarding the extension of the Thirteenth Amendment to the U.S. Constitution to merchant vessels misapprehends the reach of the Constitution and is misleading. *See* Pl. Opp. Memo. [ECF No. 18] at 21. The Thirteenth Amendment, in fact, has been expressly held to *not* apply to provisions preventing sailors from deserting their ships after contracting to work on vessels. *See United States v. Kozminski*, 487 U.S. 931, 944 (1988); *see also Robertson v. Baldwin*, 165 U.S. 275 (1897).

was a fundamental constitutional right for a U.S. citizen, remanded to this Court to determine whether setting up a system for trial by jury would be "impractical and anomalous" in American Samoa and, therefore, whether trial by jury could accommodate the "Samoan mores and matai culture." *Id.* at 1147.[4]

Plaintiffs also overlook the D.C. Circuit's subsequent holding in *Hodel*, 820 F.2d at 384-86. In *Hodel*, the D.C. Circuit analyzed the Church of Jesus Christ of Latter-Day Saints' claim for trespass against an American Samoan family who intruded onto a tract of land it had purchased. *See id.* at 375. After the High Court of American Samoa found in favor of the American Samoan family and held that the land in question was actually communal land, the Church brought an action here alleging error by the High Court and violation of due process. *See id.* Upon reviewing the Church's claims, the D.C. Circuit noted that for unincorporated territories such as American Samoa, which has "wholly dissimilar traditions and institutions," *Reid v. Covert*, 354 U.S. 1, 14 (1957), the Supreme Court has determined that "the guarantees of the Constitution apply only insofar as its 'fundamental limitations in favor of personal rights' express 'principles which are the basis of all free government which cannot be with impunity transcended.'" *Hodel*, 830 F.2d at 385. The D.C. Circuit found that the Secretary of Interior's plenary authority over the Territorial judiciary authorizes him to review decisions of the High Court for conformity with constitutional requirements and, therefore, no due process claim existed. *See id.* at 383 n.58 (citing *King v. Morton*, 520 F.2d 1140, 1144 (D.C. Cir. 1975)). In

---

[4]     Plaintiffs correctly note that this Court held that American Samoa could, in fact, provide trial by jury in *King v. Andrus*, 452 F. Supp. 11, 17 (D.D.C. 1997), but the mere fact that the D.C. Circuit mandated an inquiry of whether it was "practical" for the fundamental constitutional right of trial by jury (a clear, unambiguous right set forth in the Bill of Rights) to apply to American Samoa further demonstrates the limited application of the U.S. Constitution to American Samoa.

explaining why the Church's due process claim related to the Secretary of Interior's discretionary review of the High Court of American Samoa failed, the D.C. Circuit stated:

> It does not require much explication of Congress' plenary authority over the territories, as provided in Article IV, to unhorse this claim. The Congress has delegated its judicial power with respect to American Samoa to the President, who has in turn delegated it to the Secretary. Its authority to do so has been clear since *American Insurance Company v. 356 Bales of Cotton*, 26 U.S. (1 Pet.) 511, 546 (1828), which "has ever been taken to establish . . . that in the territories cases and controversies falling within the enumeration of Article III may be heard and decided in courts constituted without regard to the limitations of that Article; courts, that is, having judges of limited tenure. . . ." *Glidden Co. v. Zdanok*, 370 U.S. 530, 545 (1962) (Opinion of Harlan, J.); *see McAllister v. United States*, 141 U.S. 174 (1891) (limited term for territorial judges); *United States v. Fisher*, 109 U.S. 143 (1883) (their salaries reduced). The Congress, that is, could have, so far as Article III is concerned, provided that the Secretary himself would exercise the judicial power in American Samoa.

830 F.2d at 384. Thus, the D.C. Circuit, subsequent to its decision in *King* (upon which the Plaintiffs rest much of their argument), re-affirmed the unique nature of American Samoa and the limitations of the application of the U.S. Constitution to the unincorporated, outlying territory. Therefore, the D.C. Circuit's holding in *Hodel* reinforces the doctrine that, based on the Congressional determinations set forth in INA § 308(1), 8 U.S.C. § 1408(1) and INA § 101(a)(29), 8 U.S.C. § 1101(a)(29), those born on American Samoa to non-U.S. citizen parents are U.S. nationals, but not U.S. citizens by virtue of birth on American Samoa. Therefore, Plaintiffs' complaint should be dismissed.

### 2. Plaintiffs' Claims Under the Administrative Procedure Act Fail Either for Failure to State a Claim, as Untimely, or for Lack of Standing

Plaintiffs' opposition fails to demonstrate how their complaint states a claim under the Administrative Procedure Act, and therefore does not disturb the Government's arguments (set forth in its Motion to Dismiss) that the Department of State's policy and practice of imprinting endorsement code 09 on the passports issued to persons born in American Samoa cannot violate the APA as Defendants' decision merely "gives effect" to the plain language of the INA.

(Compl. at 3, ¶¶ 6-7) ("The Defendants recognize that the individual Plaintiffs are Americans, but deny that they are U.S. citizens. Instead, the Defendants classify the Individual plaintiffs as so-called "non-citizen nationals of the United States, as reflected in Section 308(1) of the [INA] . . . and the State Department's Foreign Affairs Manual ("FAM") at 7 FAM 1125.1(b)-(c). The State Department has given effect to the 'non-citizen national' classification by imprinting a disclaimer of citizenship. . . .").

In their complaint, Plaintiffs have failed to allege sufficient facts that the Agency's administrative decision to imprint accurately endorsement code 09 on the passports of persons born in American Samoa was in any way "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The APA requires a court to set aside a final agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; or "contrary to constitutional right, power, privilege, or immunity"; or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706 (2)(A)-(C); *see, e.g.*, *Perez v. Lappin*, 672 F. Supp. 2d 35, 43-44 (D.D.C. 2009) (holding that alien requesting change to his prisoner classification status failed to state a claim under the APA); *California Valley Miwok Tribe v. United States*, 424 F. Supp. 2d 197, 202-03 & n.8 (D.D.C. 2006) (holding that where APA claim was merely restatement of other claims that required statutory interpretation but failed as a matter of law, Court would grant motion to dismiss entire complaint, including APA claim, for failure to state a claim). Thus, even if this Court were to find that Plaintiffs have articulated a valid APA claim, as that claim is merely a restatement of their constitutional claims (which, as discussed above, fail), this Court should still dismiss Plaintiffs' entire complaint.

Startlingly, Plaintiffs do not concede that the APA claims of Individual Plaintiffs Fosi and Maene,[5] which state that the final agency action in question was the issuance of their passports, are not time-barred. It is well-settled that the APA has, at most, a six-year statute of limitations. *See, e.g.*, *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1094 (D.C. Cir. 1996) ("challenge . . . pursuant to the APA . . . .carries a six-year statute of limitations") (citing *Impro. Prods., Inc. v. Block*, 722 F.2d 845, 850 (D.C. Cir. 1983), *cert. denied*, 469 U.S. 931 (1984) (interpreting 28 U.S.C. § 2401 to apply to APA claims)). As this Court has held, "'[w]hen a party seeks to sue the United States pursuant to a waiver of sovereign immunity,' the statute of limitations is jurisdictional and must be 'strictly construed.'" *Terry v. United States Small Business Administration*, 699 F. Supp. 2d 49, 54-55 (D.D.C. 2010) (quoting *W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 138 (D.D.C. 2008)). "Moreover, when a statute of limitations has been regarded as jurisdictional, 'it has acted as an absolute bar [that cannot] be overcome by the application of judicially recognized exceptions . . . such as waiver, estoppel, equitable tolling, fraudulent concealment, the discovery rule, and the continuing violations doctrine.'" *Terry*, 699 F. Supp 2d at 55 (quotation and citation omitted). Thus, Individual Plaintiffs Fosi's and Maene's claims are time-barred and should be dismissed.

Plaintiffs' opposition cites, puzzlingly, to *Independent Petroleum Ass'n v. Babbitt*, 971 F. Supp. 19, 27 (D.D.C. 1997), for the proposition that the APA claims of Individual Plaintiffs Fosi and Maene are not time-barred because they challenge a policy. But in that case, Chief Judge Lamberth held that no final agency action had been taken which would grant jurisdiction under the APA. *See id.* at 28-29. Thus, as the APA claims of Individual Plaintiffs Fosi and Maene rest

---

[5] Individual Plaintiff Mamea fails to allege any date for the issuance of his passport. Mamea alleges that his children are ages 5, 4 and 2, so it is probable that their passports (if issued) were issued fewer than six years ago, but Plaintiff Mamea has not provided sufficient information to determine when his passport was issued.

on passports issued over six years ago and those decisions were not challenged in a timely fashion, those claims are time-barred.

Plaintiffs' opposition fails to disturb Defendants' argument that, should the Court find that, despite the arguments discussed above, Plaintiffs have stated a claim as a matter of law and that the Court may exercise jurisdiction over Plaintiffs' claims, the Federation does not have standing and it should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  "Under Article III of the Constitution of the United States, an association … has standing to sue on behalf of its members only if (1) at least one of its members would have standing to sue in his own right, (2) the interests the association seeks to protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested requires that an individual member of the association participate in the lawsuit."  *Sierra Club and Environmental Technology Council, Inc. v. Environmental Protection Agency*, 292 F. 3d 895, 898 (D.C. Cir 2002) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 342-43 (1977)); *see also National Ass'n of Home Builders v. E.P.A.*, 667 F.3d 6, 12 (D.C. Cir. 2011).

Plaintiffs' opposition does not (and cannot) refute the fact that the Federation has failed to adequately plead that any of its members has standing in this case.  The complaint only states generally that the Federation "is one of the oldest Samoan organizations in the continental United States" (Compl. at 10, ¶ 15(a)), but does not include any concrete facts demonstrating that any individual member has standing to sue in his or her own right.  Further, the Federation has failed to plead that there are members of the Federation who are not naturalized citizens, and are non-citizen U.S. nationals by virtue of their birth on American Samoa; therefore, the Federation's allegations are insufficient to demonstrate standing to sue as an association on behalf of its members as the Federation has failed to allege an injury-in-fact or an imminent injury.  *See Nat'l*

*Ass'n of Home Builders*, 667 F.3d at 12 (denying claim of representation standing where association could not demonstrate imminent injury to its members that would be prevented and traceable to a favorable decision in the lawsuit).  Contrary to Plaintiffs' argument in their opposition, the fact that other parties to the lawsuit may have standing does not confer standing on the Federation, as there are no allegations in the complaint that any other party to the lawsuit is a member of the Federation.  (*See generally* Compl.)

Similarly, the Federation does not have standing to sue on its own behalf.  The Federation claims that "[r]ecognition by the United States that all persons born in American Samoa are U.S. citizens would significantly advance the Samoan Federation's efforts to increase the political voice of the Samoan community." (Compl. at 10, ¶ 15(b).)  The Federation further alleges that it expends resources helping with naturalization process, and could use those funds for other purposes if the U.S. found American Samoans to be citizens in the absence of naturalization. (Compl. at 11, ¶ 15(c).).  The Federation fails to overcome the decision of the D.C. Circuit in *Nat'l Ass'n of Home Builders*.  667 F.3d at 12 ("The mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient to impart standing upon the organization") (quotation and citation omitted).  An organization suing on its own behalf must establish a "concrete and demonstrable injury to the organization's activities – with [a] consequent drain on the organization's resources . . . Indeed, the organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." *Nat'l Taxpayers Union, Inc. v. United States*, 68 F. 3d 1428, 1433 (D.C. Cir. 1995).  Here, Plaintiffs claim only that some "limited resources" of the Federation are spent helping "members of the Samoan community with the complex naturalization process" and for purposes relating to that process.  (Compl. at 11, ¶ 15(c).)  As

Plaintiffs have failed to plead sufficiently that discrete programmatic concerns are being "directly and adversely affected" by any challenged action, the Federation is without constitutional standing, and should be dismissed as a plaintiff.

## CONCLUSION

For the reasons discussed above and in their Motion to Dismiss, Defendants respectfully request the dismissal of Plaintiffs' complaint for failure to state a claim for which relief can be granted, and because this Court lacks jurisdiction over Plaintiffs' claims.

Dated: December 12, 2012
Washington, DC

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: _____/s/_____
WYNNE P. KELLY
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(202) 307-2332
wynne.kelly@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY certify that I served a copy of the foregoing Reply in Support of Defendants' Motion to Dismiss on this 12th day of December, 2012, on counsel for *Amicus Curae* via U.S. mail at:

Elizabeth M Locke
KIRKLAND & ELLIS LLP
655 15th Street, NW
Washington, DC 20005

                                        /s/Wynne P. Kelly
                                        WYNNE P. KELLY
                                        Assistant United States Attorney