## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LENEUOTI FIAFIA TUAUA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. 12-01143 (RJL) |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION
June 26, 2013 [# 9]

Plaintiffs are five non-citizen U.S. nationals born in American Samoa and the

Samoan Federation of America, a nonprofit organization serving the Samoan community

in Los Angeles.  Compl. ¶¶ 10-15.[1]  They seek declaratory and injunctive relief against

defendants, the United States and the related parties that execute its citizenship laws.  *Id.*

¶¶ 16–19.[2]  They assert that the Fourteenth Amendment's Citizenship Clause extends to

American Samoa and that people born in American Samoa are therefore U.S. citizens at

birth.  *Id.* at 25-26.  Plaintiffs also argue that Immigration and Naturalization Act §

308(1) is unconstitutional because it provides that American Samoans are noncitizen U.S.

nationals.  *See id.* at 26.  Further, they ask the Court to hold that a State Department

policy and practice are unconstitutional and invalid under the Administrative Procedure

---

[1] The five individual plaintiffs are Leneuoti Fiafia Tuaua ("Tuaua"), Va'aleama Tovia
Fosi ("Fosi"), Fanuatanu Fauesala Lifa Mamea ("Mamea"), Taffy-Lei T. Maene
("Maene"), and Emy Fiatala Afaleva ("Afaleva").  Mamea also brings his claims on
behalf of his three minor children.  *Id.* ¶ 12(a).
[2] Defendants are the United States, the State Department, the Secretary of State, and the
Assistant Secretary of State for Consular Affairs.

Act ("APA"). *See* Compl. at 26. Underlying all of these claims is the same legal argument: the Citizenship Clause applies to American Samoa, so contrary law and policy must be invalidated. The United States and related parties move to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b) for lack of subject-matter jurisdiction and failure to state a claim. *See* Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") [Dkt. # 9] at 1. Because plaintiffs have failed to state a claim upon which relief can be granted, the Court GRANTS defendants' Motion to Dismiss.

## BACKGROUND

American Samoa is located on the eastern islands of an archipelago in the South Pacific. Compl. ¶ 3. The United States claimed this territory in a 1900 treaty with Great Britain and Germany, 31 Stat. 1878, and Samoan leaders formally ceded sovereignty to the United States in 1900 and 1904, 45 Stat. 1253. American Samoa was administered by the Secretary of the Navy until 1951, when President Truman transferred administrative responsibility to American Samoa's current supervisor, the Secretary of the Interior. Exec. Order No. 10,264, 16 Fed. Reg. 6,417 (July 3, 1951).

Over the past half-century, American Samoa has strengthened its ties to the United States. The Constitution of American Samoa was approved by the Secretary of the Interior in 1967 and provides for an elected bicameral legislature, an appointed governor, and an independent judiciary. Compl. ¶ 27. In 1977, the Secretary permitted the governor to be selected by popular vote. *Id.* One year later, Congress voted to give

American Samoa a nonvoting delegate in the U.S. House of Representatives. *Id.* [3]

American Samoans have served in the U.S. military since 1900 and, most recently, in the

wars in both Iraq and Afghanistan. *Id.* ¶ 31.  In signing the 1978 legislation granting

American Samoa a delegate in Congress, President Carter acknowledged the islands'

contributions to American sports and culture and their role as "a permanent part of

American political life."  Jimmy Carter, Presidential Statement on Signing H.R. 13702

into Law (Oct. 31, 1978), *cited in* Pls.' Mem. of P. & A. in Opp'n to Gov't's Mot.

Dismiss ("Pls.' Opp'n") [Dkt. # 18] at 5 n.7.

At the same time, however, American Samoa has endeavored to preserve its

traditional way of life known as *fa'a Samoa*.  Indeed, its constitution protects the Samoan

tradition of communal ownership of ancestral lands by large, extended families:

> It shall be the policy of the Government of American Samoa to protect persons of
> Samoan ancestry against alienation of their lands and the destruction of the
> Samoan way of life and language, contrary to their best interests.  Such legislation
> as may be necessary may be enacted to protect the lands, customs, culture, and
> traditional Samoan family organization of persons of Samoan ancestry, and to
> encourage business enterprises by such persons.  No change in the law respecting
> the alienation or transfer of land or any interest therein, shall be effective unless
> the same be approved by two successive legislatures by a two-thirds vote of the
> entire membership of each house and by the Governor.

Rev. Const. of Am. Samoa art. I, § 3; *see also Craddick v. Territorial Registrar*, 1 Am.

Samoa 2d 11, 12 (1980); Amicus Br. at 4-5.  American Samoans take pride in their

unique political and cultural practices, and they celebrate its history free from conquest or

involuntary annexation by foreign powers.  Amicus Br. at 3.

---

[3] The current delegate, Eni F. H. Faleomavaega, appears as Amicus Curiae in this case
opposing the plaintiffs' suit.  *See generally* Br. of the Hon. Eni F.H. Faleomavaega as
Amicus Curiae in Supp. of Defs. ("Amicus Br.") [Dkt. # 12].

Federal law classifies American Samoa as an "outlying possession" of the United

States.  Immigration and Naturalization Act ("INA") § 101(a)(29), 8 U.S.C. §

1101(a)(29).  As such, people born in American Samoa are U.S. nationals but not U.S.

citizens at birth.  INA § 308(1), 8 U.S.C. § 1408(1).  The State Department's Foreign

Affairs Manual ("FAM") accordingly categorizes American Samoa as an unincorporated

territory and states that "the citizenship provisions of the Constitution do not apply to

persons born there."  7 FAM § 1125.1(b).  In accordance with INA and FAM, the State

Department stamps the passports of people born in American Samoa with "Endorsement

Code 09," which declares that the holder of the passport is a U.S. national but not a U.S.

citizen. *See* Compl. ¶ 7; Defs.' Mem. at 6–7.  American Samoans have been permitted to

become naturalized U.S. citizens since 1952, but plaintiffs describe that process as

"lengthy, costly, and burdensome."  Compl. ¶¶ 47–48.  American Samoans must relocate

to another part of the United States to begin the naturalization process, and the citizenship

application requires a $680 fee, a moral character assessment, fingerprinting, and an

English and civics examination.  Pls.' Opp'n at 11.

All of the individual plaintiffs were issued passports by the State Department

bearing Endorsement Code 09. *See id.* ¶¶ 10–14.  Plaintiffs allege a variety of harms that

have befallen them due to their non-citizen national status.  Several plaintiffs, despite

long careers in the military or law enforcement, remain unable to vote or to work in jobs

that require citizenship status. *Id.* ¶ 10(c), 11(c)-(e), 14(c)–(d).  Other harms include:

ineligibility for federal work-study programs in college, *id.* ¶ 11(c); ineligibility for

firearm permits, *id.* ¶ 11(e); and inability to obtain travel and immigration visas, *id.* ¶

12(e), 13(d-e).

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, defendants have moved to

dismiss plaintiffs' complaint for lack of subject-matter jurisdiction under Rule 12(b)(1)

and for failure to state a claim under Rule 12(b)(6). *See* Defs.' Mot. to Dismiss Pls.'

Compl. ("Defs.' Mot.") [Dkt. # 9] at 1.  For a motion to dismiss under Rule 12(b)(1), "the

plaintiff bears the burden of establishing the factual predicates of jurisdiction by a

preponderance of the evidence." *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C.

2006) (citing, *inter alia*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

"[P]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving

a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *U.S.*

*ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C.

2011) (citation and internal quotation marks omitted).

A motion to dismiss under Rule 12(b)(6) tests whether the plaintiff has pleaded

facts sufficient to "raise a right to relief above the speculative level," assuming that the

facts alleged are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "While a

complaint should not be dismissed unless the court determines that the allegations do not

support relief on any legal theory, the complaint nonetheless must set forth sufficient

information to suggest that there is some recognized legal theory upon which relief may

be granted." *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1078 (D.C. Cir. 1984).

In considering motions under both Rule 12(b)(1) and Rule 12(b)(6), a court must construe the complaint in a light favorable to the plaintiff and must accept as true plaintiff's reasonable factual inferences. *See Howard v. Fenty*, 580 F. Supp. 2d 86, 89–90 (D.D.C. 2008); *Smith v. United States*, 475 F. Supp. 2d 1, 7 (D.D.C. 2006) (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

## ANALYSIS

### I.   Jurisdiction

Before the Court can reach the merits of this case, it must, of course, ensure that the dispute falls within its jurisdiction. *Util. Air Regulatory Grp. v. EPA*, 320 F.3d 272, 277 (D.C. Cir. 2003).  Defendants put forth three arguments contesting this Court's jurisdiction over plaintiffs' claims: 1) two of plaintiffs' APA claims are jurisdictionally time-barred, 2) the Samoan Federation of America lacks standing, and 3) plaintiffs' complaint is barred by the political question doctrine. *See* Defs.' Mem. at 17-18, 19-23. For the reasons set forth below, the Court finds that it has jurisdiction.

First, defendants allege that two of the five individual plaintiffs' APA claims are time-barred because their passports, bearing Endorsement Code 09, were issued outside the six year limitations period. *See* Defs.' Mem. at 20-21.[4]  Putting aside the merits of defendants' argument, however, the fact remains that the three other plaintiffs have, in essence, raised the identical APA claim.  Thus, having jurisdiction to hear those claims

---

[4] The APA time bar issue is best understood as a jurisdictional matter.  Our Circuit has held that the general section 2401(a) statute of limitations applies to APA claims unless another statute provides otherwise, *see Harris v. FAA*, 353 F.3d 1006, 1009 (D.C. Cir. 2004), and that, "[u]nlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition," *Spannaus v. U.S. Dep't of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987).

effectively provides this Court with the very jurisdiction necessary to evaluate the merits

of these claims.

Similarly, defendants' assertion that the Samoan Federation of America lacks

standing to sue either on its own behalf or on behalf of its members, *see* Defs.' Mem. at

21-23, is an argument that is of no real consequence.[5] It is well-established that a court

need not consider the standing of the other plaintiffs when at least one plaintiff has

standing. *See In re Navy Chaplaincy*, 697 F.3d 1171, 1178 (D.C. Cir. 2012); *Tozzi v.*

*U.S. Dep't of Health & Human Servs.*, 271 F.3d 301, 310 (D.C. Cir. 2001); *see also Watt*

*v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981); *Mountain States Legal Found.*

*v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996).  The bottom line here is clear:

defendants do not allege that the individual plaintiffs lack standing, nor is there any

reason for this Court to believe that they do.  As such, the Court need not address the

standing of the Samoan Federation of America in order to determine whether it has

jurisdiction.

Finally, defendants advance the novel and somewhat exotic jurisdictional

argument that plaintiffs' suit raises a nonjusticiable political question.[6] *See* Defs.' Mem.

at 17–18.  The Government argues that, "at bottom," plaintiffs are arguing for a grant of

---

[5] "A . . . motion to dismiss for lack of standing implicates subject matter jurisdiction . . .
." *Edwards v. Aurora Loan Serv.*, 791 F. Supp. 2d 144, 150 (D.D.C. 2011).

[6] The political question doctrine is a jurisdictional matter. "[T]he concept of
justiciability, which expresses the jurisdictional limitations imposed on federal courts by
the 'case or controversy' requirement of Art. III, embodies . . . the . . . political question
doctrine[] . . . . [T]he presence of a political question [thus] suffices to prevent the power
of the federal judiciary from being invoked by the complaining party." *Schlesinger v.*
*Reservists Comm. to Stop the War*, 418 U.S. 208, 215 (1974) (quoted in *Hwang Geum*
*Joo v. Japan*, 413 F.3d 45, 47–48 (D.C. Cir. 2005)).

statehood to American Samoa, and that such a determination is a political question committed by the Constitution to Congress. *See id.* at 18. Plaintiffs respond that their complaint does not argue for statehood, but instead argues for the application of a particular constitutional provision to a territory, a claim "eminently fit for judicial resolution." Pls.' Opp'n at 33.

To the extent they view plaintiffs as petitioning for statehood, however, defendants misread the complaint. The complaint clearly urges the application of the Citizenship Clause to American Samoa, but it never "demands" recognition of American Samoa as a state or even mentions the word "statehood." *See generally* Compl. The actual task before the Court—determining whether the Citizenship Clause applies to American Samoa—is, indeed, a proper judicial inquiry.[7]

## II.   Failure to State a Claim

Having jurisdiction, the Court turns to defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim. Plaintiffs' claims all hinge upon one legal assertion:

---

[7] The Supreme Court has decided similar questions throughout its history. *See, e.g.*, *Boumediene v. Bush*, 553 U.S. 723 (2008) (finding Suspension Clause applicable to U.S. Naval Station at Guantanamo Bay); *Balzac v. Porto Rico*, 258 U.S. 298 (1922) (Sixth Amendment jury trial right inapplicable to unincorporated territory of Puerto Rico); *Downes v. Bidwell*, 182 U.S. 244 (1901) (Revenue Clauses inapplicable to Puerto Rico). Most recently, in *Boumediene*, the Supreme Court expressly rejected the contention that the Constitution's extraterritorial application presents a political question. 553 U.S. at 754-55. In fact, defendants themselves rely on several cases in which courts exercised their jurisdiction to determine whether the Citizenship Clause extended to the Philippines while it was an unincorporated territory of the United States. *See* Defs.' Mem. at 12-15 (citing, *inter alia*, *Nolos v. Holder*, 611 F.3d 279 (5th Cir. 2010); *Lacap v. INS*, 138 F.3d 518 (3d Cir. 1998); *Valmonte v. INS*, 136 F.3d 914 (2d Cir. 1998); *Rabang v. INS*, 35 F.3d 1449 (9th Cir. 1995), *cert. denied sub nom. Sanidad v. Immigration & Naturalization Serv.*, 515 U.S. 1130 (1995); *Licudine v. Winter*, 603 F. Supp. 2d 129 (D.D.C. 2009)).

the Citizenship Clause guarantees the citizenship of people born in American Samoa.

Defendants argue that this assertion must be rejected in light of the Constitution's plain

language, rulings from the Supreme Court and other federal courts, longstanding

historical practice, and pragmatic considerations. *See generally* Defs.' Mem.; Gov't's

Reply in Supp. of Their Mot. to Dismiss ("Defs.' Reply") [Dkt. # 20]; Amicus Br.

Unfortunately for the plaintiffs, I agree. The Citizenship Clause does *not* guarantee

birthright citizenship to American Samoans. As such, for the following reasons, I must

dismiss the remainder of plaintiffs' claims.

The Citizenship Clause of the Fourteenth Amendment provides that "[a]ll persons

born or naturalized in the United States and subject to the jurisdiction thereof, are citizens

of the United States and of the State wherein they reside." U.S. Const. amend. XIV,

section 1. Both parties seem to agree that American Samoa is "subject to the

jurisdiction" of the United States, and other courts have concluded as much. *See* Pls.'

Opp'n at 2; Defs.' Mem. at 14 (citing *Rabang* as noting that the territories are "subject to

the jurisdiction" of the United States). But to be covered by the Citizenship Clause, a

person must be born or naturalized "in the United States *and* subject to the jurisdiction

thereof." Thus, the key question becomes whether American Samoa qualifies as a part of

the "United States" as that is used within the Citizenship Clause.[8]

---

[8] The Court is also guided by the familiar principle that "'[p]roper respect for a coordinate branch of the government' requires that we strike down an Act of Congress only if 'the lack of constitutional authority to pass [the] act in question is clearly demonstrated.'" *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2579 (2012) (quoting *United States v. Harris*, 106 U.S. 629, 635 (1883)). Unless it can be *clearly*

The Supreme Court famously addressed the extent to which the Constitution applies in territories in a series of cases known as the Insular Cases.[9]  In these cases, the Supreme Court contrasted "incorporated" territories—those lands expressly made part of the United States by an act of Congress—with "unincorporated territories" that had not yet become part of the United States and were not on a path toward statehood.  *See, e.g., Downes*, 182 U.S. at 312; *Dorr v. United States*, 195 U.S. 138, 143 (1904); *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 268 (1990); *Eche v. Holder*, 694 F.3d 1026, 1031 (9th Cir. 2012) (citing *Boumediene v. Bush*, 553 U.S. 723, 757-58 (2008)).[10] In an unincorporated territory, the Insular Cases held that only certain "fundamental" constitutional rights are extended to its inhabitants.  *Dorr*, 195 U.S. 148-49; *Balzac v. Porto Rico*, 258 U.S. 298, 312 (1922); *see also Verdugo-Urquidez*, 494 U.S. at 268. While none of the Insular Cases directly addressed the Citizenship Clause, they suggested that citizenship was not a "fundamental" right that applied to unincorporated territories.[11]

---

shown that the Citizenship Clause extends to American Samoa, plaintiffs' legal theory should be rejected.

[9] The Insular Cases include *De Lima v. Bidwell*, 182 U.S. 1 (1901); *Goetze v. United States*, 182 U.S. 221 (1901); *Dooley v. United States*, 182 U.S. 222 (1901); *Armstrong v. United States*, 182 U.S. 243 (1901); *Downes v. Bidwell*, 182 U.S. 244 (1901); and *Huus v. N.Y. and Porto Rico Steamship Co.*, 182 U.S. 392 (1901).

[10] Plaintiffs do not contest whether American Samoa is an "incorporated" or "unincorporated" territory; rather they reject this dichotomy altogether.  *See* Pls.' Opp'n at 25-33.  For the purposes of this characterization, the Court assumes that American Samoa is an "unincorporated" territory, as no act of incorporation has been identified.

[11] Plaintiffs cite two cases to support the conclusion that citizenship is a fundamental right: *Trop v. Dulles*, 356 U.S. 86, 103 (1958) (plurality op.) (mentioning the "fundamental right of citizenship") and *Afroyim v. Rusk*, 387 U.S. 253, 267-68 (1967) (citizenship is "no light trifle").  Each of these cases discusses the fundamentality of citizenship in dicta, and neither case has anything to do with territorial citizenship.  Such precedent is unpersuasive in light of the voluminous federal case law discussed herein

For example, in the Insular Case of *Downes v. Bidwell*, the Court addressed, via multiple opinions, whether the Revenue Clause of the Constitution applied in the unincorporated territory of Puerto Rico. In an opinion for the majority, Justice Brown intimated in dicta that citizenship was not guaranteed to unincorporated territories. *See Downes*, 182 U.S. at 282 (suggesting that citizenship and suffrage are not "natural rights enforced in the Constitution" but rather rights that are "unnecessary to the proper protection of individuals."). He added that "it is doubtful if Congress would ever assent to the annexation of territory upon the condition that its inhabitants, however foreign they may be to our habits, traditions, and modes of life, shall become at once citizens of the United States." *Id.* at 279-80. He also contrasted the Citizenship Clause with the language of the Thirteenth Amendment, which prohibits slavery "within the United States, *or* in any place subject to their jurisdiction." *Id.* at 251 (emphasis added). He stated:

> [T]he 14th Amendment, upon the subject of citizenship, declares only that "all persons born or naturalized in the United States, *and* subject to the jurisdiction thereof, are citizens of the United States, and of the state wherein they reside." Here there is a limitation to persons born or naturalized in the United States, which is not extended to persons born in any place "subject to their jurisdiction."

*Id.* (emphasis added). In a concurrence, Justice White echoed this sentiment, arguing that the practice of acquiring territories "could not be practically exercised if the result would be to endow the inhabitants with citizenship of the United States." *Id.* at 306.

---

that concludes that citizenship is not guaranteed to people born in unincorporated territories.

Plaintiffs rightly note that *Downes* did not possess a singular majority opinion and addressed the right to citizenship only in dicta. Pls.' Opp'n at 25-27. But in the century since *Downes* and the Insular Cases were decided, *no* federal court has recognized birthright citizenship as a guarantee in unincorporated territories. To the contrary, the Supreme Court has continued to suggest that citizenship is not guaranteed to people born in unincorporated territories. For example, in a case addressing the legal status of an individual born in the Philippines while it was a territory, the Court noted—without objection or concern—that "persons born in the Philippines during [its territorial period] were American nationals" and "until 1946, [could not] become United States citizens. *Barber v. Gonzales*, 347 U.S. 637, 639 n.1 (1954). Again, in *Miller v. Albright*, 523 U.S. 420, 467 n.2 (1998), Justice Ginsberg noted in her dissent that "the only remaining noncitizen nationals are residents of American Samoa and Swains Island" and failed to note anything objectionable about their noncitizen national status. More recently, in *Boumediene v. Bush*, the Court reexamined the Insular Cases in holding that the Constitution's Suspension Clause applies in Guantanamo Bay, Cuba. 553 U.S. 723, 757-59 (2008). The Court noted that the Insular Cases "devised . . . a doctrine that allowed [the Court] to use its power sparingly and where it would most be needed. This century-old doctrine informs our analysis in the present matter." *Id.* at 759.

Plaintiffs argue that *Boumediene* did not reaffirm—but instead narrowed—the Insular Cases. Pls.' Opp'n at 28-29. They point to the Court's statement that "[i]t may well be that over time the ties between the United States and any of its unincorporated Territories strengthen in ways that are of constitutional significance." *Boumediene*, 553

U.S. at 758 (citing *Torres v. Puerto Rico*, 442 U.S. 465, 475–476 (1979) (Brennan, J., concurring in judgment) ("Whatever the validity of the [Insular Cases] in the particular historical context in which they were decided, those cases are clearly not authority for questioning the application of the Fourth Amendment—or any other provision of the Bill of Rights—to the Commonwealth of Puerto Rico in the 1970's.")). *Id.* This vague statement crafted in a vastly different context, however, does not license this Court to turn its back on the more direct and more persuasive precedent and the legal framework that has predominated over the unincorporated territories for more than a century.

Indeed, other federal courts have adhered to the precedents of the Insular Cases in similar cases involving unincorporated territories. For example, the Second, Third, Fifth, and Ninth Circuits have held that the term "United States" in the Citizenship Clause did not include the Philippines during its time as an unincorporated territory. *See generally Nolos v. Holder*, 611 F.3d 279 (5th Cir. 2010); *Valmonte v. INS*, 136 F.3d 914 (2d Cir. 1998); *Lacap v. INS*, 138 F.3d 518 (3d Cir. 1998); *Rabang*, 35 F.3d 1449. These courts relied extensively upon *Downes* to assist with their interpretation of the Citizenship Clause. *See Nolos*, 611 F.3d at 282-84; *Valmonte*, 136 F.3d at 918-21; *Rabang*, 35 F.3d at 1452-53. Indeed, one of my own distinguished colleagues in an earlier decision cited these precedents to reaffirm that the Citizenship Clause did not include the Philippines during its territorial period. *See Licudine v. Winter*, 603 F. Supp. 2d 129, 132-34 (D.D.C. 2009) (Robinson, J.).[12]

---

[12] The Philippines cases also reject the applicability of *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), in which the Supreme Court addressed whether a child born to alien

Plaintiffs attempt to distinguish these cases by noting that the Philippines, unlike American Samoa, was a territory only "temporarily." Pls.' Opp'n at 31. But none of these cases based their decision on the fact that the Philippines was a temporary territory. Even if this distinction made a difference, plaintiffs fail to rebut the Ninth Circuit's recent holding that the Northern Mariana Islands—a current and longstanding territory—is not included within the bounds of the Citizenship Clause. *Eche v. Holder*, 694 F.3d 1026, 1027-28 (9th Cir. 2012).[13] In short, federal courts have held over and over again that unincorporated territories are not included within the Citizenship Clause, and this Court sees no reason to do otherwise![14]

In both their brief and in oral argument, plaintiffs placed great weight on our Circuit's decision in *King v. Morton*, 520 F.2d 1140 (D.C. Cir. 1975). In that case, the Court addressed whether an American citizen was guaranteed the right to trial by jury in

---

parents in the United States was a citizen. *See Nolos*, 611 F.3d at 284; *Valmonte,* 136 F.3d at 920; *Rabang,* 35 F.3d at 1454; *see also* Pls.' Opp'n at 13, 24 (citing *Wong Kim Ark*). Because the child was born in San Francisco, the Court did not need to address the territorial scope of the Citizenship Clause in that case.

[13] Plaintiffs address *Eche* in a footnote, stating simply that it "relies on the same flawed arguments as the other cases cited by Defendants." Pls.' Opp'n at 31 n.25.

[14] Unpersuasively, plaintiffs attempt to use legislative history to support the territorial reach of the Citizenship Clause. *See* Pls.' Opp'n at 13-18. Plaintiffs cite, *inter alia*, a senator's comment that the Citizenship Clause declares that "every person born within the limits of the United States [is] a citizen." *Id.* at 13. This comment fails to shed any light on whether the "United States" includes its territories. Plaintiffs also rely upon contemporaneous language from another senator, President Jackson, and other legislation that include people in the "Territories" within the bounds of the Citizenship Clause. *Id.* at 13-15. However, it is unclear from this language whether the "Territories" included only incorporated territories on the path to statehood or also unincorporated territories— particularly unincorporated territories such as American Samoa that had not yet come into existence. Even if this legislative history were clear, these stray comments are not sufficient to upend years of contrary legal precedent.

14

American Samoa. *Id.* at 1146. Rejecting the reliance on "key words such as 'fundamental' or 'unincorporated territory'" in the Insular Cases and other cases, the court instead employed the test from *Reid v. Covert*, 354 U.S. 1, 75 (1957) (Harlan, J., concurring): asking whether the right to trial by jury would be "'impractical and anomalous.'" *King*, 520 F.2d at 1147 (quoting *Reid*, 354 U.S. at 75). As defendants rightly note, this case addressed the rights of an *existing* citizen in American Samoa—not the right of persons born in American Samoa to citizenship itself. Defs.' Reply at 9. This distinction was critical in *Reid*, the case upon which *King* relied. As the Supreme Court noted in *Boumediene*, "That the petitioners in *Reid* were American citizens was a key factor in the case and was central to the plurality's conclusion that the Fifth and Sixth Amendments apply to American civilians tried outside the United States." 553 U.S. at 760. Further, neither *King* nor *Reid* discussed the right to citizenship—a right that other federal courts have addressed directly and, in doing so, have refused to extend to unincorporated territories.

Morever, our Circuit appeared to reaffirm its commitment to Insular Cases—in terms of extending only "fundamental" rights to unincorporated territories—in a case following *King* that involved a due process claim in American Samoa. *Corp. of Presiding Bishop of Church of Jesus Christ of the Latter-Day Saints v. Hodel*, 830 F.2d 374, 385 (D.C. Cir. 1987). In that case, the Circuit stated that "the Supreme Court long ago determined that in the 'unincorporated' territories, such as American Samoa, the guarantees of the Constitution apply only insofar as its 'fundamental limitations in favor of personal rights' express 'principles which are the basis of all free government which

cannot be with impunity transcended.'" *Id.* (citing *Dorr*, 195 U.S. at 146-47). The court

held that access to a court independent of the executive branch is not a "fundamental"

right extending to American Samoa. *Id.* at 386. In light of this later case and *King*'s

distinct context, this Court does not find *King* to be an appropriate guidepost for this

case.[15]

Finally, this Court is mindful of the years of past practice in which territorial

citizenship has been treated as a statutory, and not a constitutional, right. In the

unincorporated territories of Puerto Rico, Guam, the U.S. Virgin Islands, and the

Northern Mariana Islands, birthright citizenship was conferred upon their inhabitants by

various statutes many years after the United States acquired them. *See* Amicus Br. at 10-

11. If the Citizenship Clause guaranteed birthright citizenship in unincorporated

territories, these statutes would have been unnecessary. While longstanding practice is

not sufficient to demonstrate constitutionality, such a practice requires special scrutiny

before being set aside. *See, e.g.*, *Jackman v. Rosenbaum Co.*, 260 U.S. 22, 31 (1922)

(Holmes, J.) ("If a thing has been practiced for two hundred years by common consent, it

will need a strong case for the Fourteenth Amendment to affect it[.]"); *Walz v. Tax*

*Comm'n*, 397 U.S. 664, 678 (1970) ("It is obviously correct that no one acquires a vested

---

[15] In a brief, per curiam opinion, our Circuit declined to address the question of whether the Citizenship Clause applied to the Philippines in *Mendoza v. Soc. Security Comm'r*, 92 F. App'x 3, 3 (2004). In claiming that *Mendoza* suggests that birthright citizenship in the territories is "an open question in the Circuit," plaintiffs attempt to make a mountain out of a molehill. The *Mendoza* court sidestepped the issue not because it was necessarily "an open question"—but rather because the issue was simply unnecessary to the disposition of the case. *See id.* ("We need not decide any of the constitutional questions presented by Amicus . . . .").

or protected right in violation of the Constitution by long use . . . . Yet an unbroken

practice . . . is not something to be lightly cast aside."). And while Congress cannot take

away the citizenship of individuals covered by the Citizenship Clause, it can bestow

citizenship upon those not within the Constitution's breadth. *See* U.S. Const. art. IV, § 3,

cl. 2 ("Congress shall have Power to dispose of and make all needful Rules and

Regulations respecting the Territory belonging to the United States."); *id.* at art. I, § 8, cl.

4 (Congress may "establish an uniform Rule of Naturalization . . . ."). To date, Congress

has not seen fit to bestow birthright citizenship upon American Samoa, and in accordance

with the law, this Court must and will respect that choice.[16]

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' Motion to Dismiss.

An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[16] Because the Court finds statutory interpretation and legal precedent sufficient to grant defendants' motion to dismiss, it need not address the Amicus's arguments about the potentially deleterious effects of mandating birthright citizenship on American Samoa's traditional culture. *See* Amicus Br. at 12-18.